Mr. Frost, are you on the line? I am, Your Honor. All right. And Mr. Lantzman, you're on the line? I am, Your Honor. All right. Mr. Frost, you can proceed. Thank you, Your Honor. Good morning, Your Honors. My name is Robert Frost of Frost-Bussard LLC in New Haven, Connecticut, representing the defendant appellant, Muhammad Shahbaz. Your Honors, the lead sentencing appeal arises out of a food stamp fraud investigation. I'm sorry, Your Honor. Yes. You submitted a letter just the other day, but you're discontinuing your appeal from the compassionate release denial. Is that right? Yes, Your Honor. I think it's laid out in the letter. There was a delay in getting back the signed copy from Mr. Shahbaz. But yes, I've not received it yet. Okay. So, Your Honor, returning to the sentencing appeal, it arises out of a food stamp fraud investigation of a particular market, the WB Trade Fair market in Waterbury, Connecticut. The investigation resulted in the arrest and prosecution of four store employees. Mr. Shahbaz was one of those employees. We respectfully submit that the district court committed procedural error in Mr. Shahbaz's sentencing by failing to adequately explain its decision to impose a sentence of 33 months on Mr. Shahbaz when the court had already imposed identical sentences of 30 months on two similarly situated non-managerial employees who also worked at the WB market. In the absence of any specific explanation, the 33-month sentence fails to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. To the extent the court... I'm sorry, yes? Didn't the district court explain that Mr. Shahbaz was a manager of sorts at times, that he taught the others how to engage in the case? Was him a relatively modest bump-up of three months? So the problem I have with that, Your Honor, is that the way that came up at the sentencing is during my presentation, I made it clear that our position was, as it was throughout the plea negotiations and the sentencing memoranda, that he was not a supervisor. He did not teach people. There were some statements in the discovery that suggested that. We took the position there were serious reliability issues with those statements, and the government didn't seek an enhancement in the case. But when I made the statement, the court interjected and asked government counsel to explain why its I'm a little unclear where that was coming from, because it wasn't in the government sentencing memorandum. There was a reference to another defendant in the PSR who has a similar name, Tahir Shahzad, S-H-A-Z-H-A-D, as in David, who was an acknowledged and admitted manager who did supervise people. But our position was Mr. Shahbaz did not teach people to do this. And, in fact, there was some sense that the statements by some of these employees were made because Mr. Shahbaz, my client, had returned to Pakistan and there seemed to be an effort to pin it on him while he was out of the country. He came back and, of course, ended up being arrested. But he disputed and I disputed at the sentencing that he was teaching people or supervising people. And that remained a disputed issue. The government responded. Excuse me, Mr. Frost, I'm a little confused. I thought your argument was that the judge did not give a reason for the slightly higher sentence. But now you're saying it seems to me that she did give a reason, but the reason was incorrect. Well, our argument on appeal, Your Honor, was that she didn't give a specific reason for the difference. The government's response was exactly Judge Chin's question, which was didn't she explain that he taught other people and make a finding in that regard? And my response to that is there was no specific finding made by the court. There was a response by government counsel that the court said thank you to her words to that effect. And then in the ultimate sentence, she made some brief reference. But that was a disputed issue. If she was going to use that as the basis to sentence Mr. Shabazz differently than the other two non-manager employees, then there should have been a specific finding in a hearing on that issue. Was this objection, was that objection made at the time that the judge's what you call brief reference to this client had taught other people how to commit the crime? A reference that she made while she was explaining the sentence that she was giving, which was higher than the other people got. Was there an objection made that this was inaccurate and that she needed to have a hearing and she shouldn't have made that finding or she wasn't actually making a finding, et cetera? At the end of the sentence, no, Your Honor. During the sentencing hearing, I indicated that it was a disputed issue, that we dispute that issue. I would say that in announcing her sentence, she also, it was a little unclear to me what her reasoning was because she also noted that she was finding no aggravating or mitigating circumstances to support her sentence and that she was imposing the sentence so as to avoid unwarranted sentencing disparities. It wasn't clear, certainly, and I was defense counsel at sentencing, that's true, and I did not, at the end of the proceeding, make a very targeted specific objection. But I think at the end of the day, the record wasn't exactly clear what she was saying justified a three month above the appellate waiver sentence based on what she said. So to answer your question, Your Honor, I did not, at the very end of the proceeding, make an objection, that's true. Okay, and since you did mention Mr. Shahzad in the course of your argument, I'm just wondering, he was sentenced later than the other three defendants and had not been sentenced at the time of the briefing. Has he been sentenced since and do we know what his sentence was? He has been sentenced, Your Honor. He was sentenced in July of last year. He was sentenced to one year and one day. I would point out, however, Your Honor, that based on my review of the docket and my understanding, I believe there was a 5K motion by the government in his sentencing, which would have, would explain. So he's not comparable in any case. No, and so the defendants, the other defendants who were sentenced, the only other defendants who were sentenced were Mr. Menarca-Gonzalez and Mr. Talat Mahmoud, and they were the ones that received the 30-month sentences, the identical sentences, 30-month sentence, three-year supervised release, and a joint and several order of restitution. So, Your Honor, it's really, that's the procedural error that we are relying on primarily, that she did not explain what was animating the difference between Mr. Shabazz and why she was sentencing him to three more months, and the record doesn't make that clear. There was, there is an argument, and I recognize some of the difficulties that we face in arguing the substantive unreasonableness of a sentence that's only three months more than the other defendants. But in terms of consistency and the way in which the differentials are applied here, we're left with a sentence that is higher, but it's not exactly clear why. Mr. Frost, the differential is so slight. I mean, these defendants are not identically situated, even putting aside the question of whether Mr. Shabazz trained him. There are differences in terms of age, family circumstances, et cetera. It's hard to say this is procedural error for such a modest difference that is three months. Well, Your Honor, I think the procedural error doesn't come from the difference in months. It comes from whether the judge explained why she's giving a higher sentence to Mr. Shabazz as opposed to those two defendants. The record does, the factors that you just cited were not referenced at all in Judge Bryant's sentencing decision on the record. All right. Let's hear from the government. You've saved two minutes for rebuttal. Thank you. Good morning. This is Assistant United States Attorney Konstantin Lanthan for the government FOE and may it please the court. Mr. Shabazz is the felon in this case, received a middle of the guidelines range sentence for his participation in the food stamp fraud scheme. He worked at a convenience store that was owned by his brother-in-law. He and other employees allowed customers to purchase ineligible items using their food stamp benefits and to trade food stamp benefits for cash at a two-to-one markup, meaning that a customer who received government assistance for their family would be permitted to get $100 in cash for $200 worth of benefits. The total loss amount in this case was calculated at over $1.5 million. The guidelines range, which was not in dispute, was 30 to 37 months of imprisonment and the district court imposed a 33-month sentence, which was squarely in the middle of the guidelines. Mr. Shabazz has attacked the sentence as both procedural and substantive or reasonable. It sounds like the procedural aspect of it is what the court is most interested in, what appellant has focused on in this oral argument, so I will do the same, but if there are any questions about the substantive unreasonable portion, I'm certainly open to them. Mr. Shabazz's argument is that the court failed to adequately explain its decision to impose a 33-month sentence when it imposed a 30-month sentence on two other employees involved in the scheme. But the sentencing judge in this case did clearly state that she found Mr. Shabazz more culpable than the other employees with whom he compared himself. And now here, Attorney Frost has focused on the question of whether Mr. Shabazz taught others how to perform the scheme, how to perform the fraudulent transactions. But that wasn't the only way that the sentencing judge stated that Mr. Shabazz was different. In the sentencing transcript, A184... Before you get to the other reasons, let's just talk a little bit about that one, whether he taught others. She did make that finding, I think. What is there in the record to support that finding? The finding that the judge made, I believe, is based off of the proffered statement by the Assistant United States Attorney at sentencing. And that statement was based on interviews with the other employees in which the employees told investigators that it was Mr. Shabazz who taught them how to do this. That, Your Honors, that wasn't included in any kind of evidentiary hearing on the record. But as the court noted, she clearly made that finding. Mr. Frost had the opportunity at sentencing to object to it contemporaneously. Had he done so, the government would have been put to its burden. It's a lower burden in sentencing, but put to its burden to prove it up. To then, on appeal, raise this point as procedural unreasonableness and that the judge has failed to state the reasons seems incongruous. It's not that the judge has failed to state the reasons. It's that Mr. Frost disagrees with the reasons stated. And that's something that should have been addressed at sentencing with a contemporaneous objection. And what were some of the other, you were about to tell us, other areas of difference? I appreciate it, Your Honor. Just to quote the judge, she said, Mr. Shabazz is not analogous, as far as has been shown to the court, with any other person referenced in the case. And in getting to that, directly before that, she talks about there's nothing to mitigate his culpability. He wasn't pressured. He wasn't forced. There was absolutely no pressure put on him to do this, to do it himself, to train other people to do it, and to keep records of doing such a shameful thing. Now, the record keeping is the more critical aspect of this, the government would assert, rather than necessarily just a significant need, it's impossible to perform without keeping a record of how much cash is going out and how much in food stamp benefits is coming in. And it was Mr. Shabazz who kept those records at the end of the day. Those records were kept. Excuse me, this is Judge Lynch. This puzzles me. If he's keeping a record, then it would seem to me he's not just pocketing the money. There would be no need to keep any fancy records if a clerk in the store accepts the payment and then just pockets the difference. Puts in the cash register $100 worth of food stamps and keeps the other $100 for himself and either uses them or cashes them out somewhere else. The meticulous record keeping is if the store as a whole is engaged in this practice, right? And that is correct, and that is the government's view of this fraud. Right. So, excuse me, where I was headed with this is, am I right that there's no real dispute that this isn't Mr. Shabazz's scheme, that he doesn't get the money? He taught these other people how to do it or what they were expected to do, but they didn't then turn over some proceeds to him or anything like that. It's the store's owner that's getting all the benefit, right? That is correct, Your Honor, and that was clear in the record and the sentencing judge was aware of it. Yeah, and I understand the sentencing judge was aware of it and I also understand that the sentencing guidelines then make these underlings responsible for $1.5 million worth of fraud when, as far as I can see, not one of them made a penny out of it other than their presumably low salary for working as clerks in a convenience store, right? That's correct. They were for more than a year Mr. Shabazz participated in this fraud that resulted in losses which, without a dispute, were over $1.5 million and he agreed that that amount was what he was responsible for in his plea agreement. Right. So, the necessity of keeping these records, the records were kept on brown paper bags, so because the money was going to the store and cash was being brought over, it seems like from another store, one that was run by Mr. Shabazz's brother. So, the store that he was working on was owned by his brother-in-law and another store where checks were cashed, was run by his brother, was brought over to the WV grocery where he worked. It's necessary to do that in order to perpetuate the scheme. Is there anything in the record to indicate that the brother-in-law who owned the store provided support to Mr. Shabazz and his family that he did not provide to the other defendants? The government was clear in sentencing that it did not have any evidence that Mr. Shabazz received any extra benefits beyond what was his modest salary at the store payment for his work at the store. Of course, Mr. Shabazz's sister was married to the brother-in-law, so the court could look at it as the money is going to someone within his immediate family, to the family of his sister, but it was not, as far as the government has evidence of, money that went to Mr. Shabazz himself. Alright, anything else? Yes, so one point I wanted to address was Attorney Frost's assertion that the judge should have made a specific finding, and that gets to this question of whether there's really any magic incantation that the sentencing court has to make. The government would assert there isn't one. The judge was clear that she found Mr. Shabazz was not analogous to others. She gave her reasons for that finding. No objection was given to those reasons, and as such the government would assert that she has done more than enough to justify the sentence that was imposed. If the court has no further questions, the government would urge that the sentence be upheld and would rest on its briefs. Thank you. Mr. Frost, you have two minutes for a rebuttal. No rebuttal, Your Honor.